UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                              Case No.   8:07-cr-99-T-23TBM
                                                           8:10-cv-437-T-23TBM
FRANCISCO PAUL VALDEZ-GONZALEZ
_____/

**O R D E R**

    Valdez-Gonzalez's motion to vacate pursuant to 28 U.S.C. § 2255 (Doc. 1)

challenges the validity of his convictions for both conspiring to possess and possessing

with the intent to distribute five kilograms or more of cocaine while on board a vessel.

Valdez-Gonzalez pleaded guilty without a plea agreement and was sentenced to 245

months imprisonment.  The circuit court affirmed (Doc. 484) both the convictions and

the sentence.  The following month the sentence was reduced (Doc. 487) under Rule

35(b), Federal Rules of Criminal Procedure, to 156 months based on his post-

sentencing substantial assistance.

    The 2007 interdiction of the cargo ship *Gatun*, of which Valdez-Gonzalez was

the captain, was the largest seizure of cocaine (approximately nineteen tons) in

American maritime history.  The following factual basis is from Valdez-Gonzalez's

plea hearing (Doc. 315 at 22-25):

> The facts that the Government would establish at trial would be
> the  following:  That these defendants along with several others

were engaged in a plan to smuggle cocaine on the motor vessel *Gatun* in March of this year, 2007, and transport it to Topolobambo, Mexico, for further distribution.

That in the course of that criminal episode, in the early morning hours of March 17, 2007, in international waters off the coast of Panama in the Eastern Pacific Ocean, five go-fast vessels approached the motor vessel *Gatun* with multi-ton quantities of cocaine on each of those go-fast vessels. The cocaine was transferred from each go-fast vessel to the deck of the motor vessel *Gatun* by the crane, and then secreted in two compartments, containers, on the deck of the *Gatun*.

The total quantity of cocaine that was transferred and secured in those containers was 760 bales, or a total weight of approximately 19 tons, or 38,000 pounds, however you want to quantify it.

This process took several hours. Later that same day, March 17th, at approximately 9:30 in the evening, the motor vessel *Gatun* was approached by the United States Coast Guard Cutter Sherman. Upon completion of right of approach questions by the Coast Guard personnel, permission was given by the Government of Panama for the Coast Guard to board the *Gatun* and conduct an inspection of the vessel.

Upon embarking on the *Gatun*, the Coast Guard boarding team took various ion scans that are designed to determine or disclose trace elements of drugs. Approximately two dozen ion scans were taken from two containers in particular on the deck of the *Gatun*. Upon testing of these swabs, it was determined that these particular samples tested for amounts of – trace amounts of cocaine on the exterior of the containers. Therefore, permission was given for the boarding team to conduct a minimally invasive or intrusive search of those containers. And upon doing so the cocaine previously mentioned was located and ultimately extracted.

There were a total of 14 crew members on board the motor vessel *Gatun*. Three were Panamanian; eleven were of Mexican nationality.

Upon discovery of the cocaine, it was then field tested for a controlled substance three times and determined to be cocaine.

The following day, March 18th, 2007, the United States Coast Guard District 11 Commander requested that the Government of Panama waive objection to the enforcement of United States law by the United States Government against the 11 Mexican Nationals and to obtain possession of the bulk contraband found aboard the motor vessel *Gatun*.

Later that same day, the Government of Panama notified the United States that it had, in fact, waived jurisdiction over the Mexican Nationals aboard the freighter *Gatun* and the bulk contraband. Thereafter, these defendants, the entire 11 Mexican contingency of this crew, were brought to Florida via Panama.

Various defendants upon their arrival waived their rights according to *Miranda* and admitted knowledge and participation in the aforementioned event, to include . . . Mr. Valdez-Gonzalez. That would be the evidence we would present, Your Honor.

Immediately after the reading of the factual basis Valdez-Gonzalez pleaded guilty. Two weeks before sentencing Valdez-Gonzalez moved both to withdraw his plea of guilty to each count and to dismiss counsel because counsel allegedly erroneously advised him that he had no meritorious defense and that he was facing a potential sentence of life imprisonment if he did not plead guilty. Each motion was denied. Valdez-Gonzalez was sentenced to 245 months imprisonment. His convictions and sentence were affirmed on appeal. (Doc. 484). The present Section 2255 motion to vacate followed. The United States admits the motion is timely. (Doc. 5 at 4) Valdez-Gonzalez re-states his grounds in a supplement, which he supports with a memorandum of points and authorities. (Doc. 6 and 6-1) The United States responds (Doc. 5 and 8) to both the original motion to vacate and the supplement. Valdez-Gonzalez files another document (Doc. 13) entitled a "supplement," but the

document is, more accurately, a reply. Valdez-Gonzalez asserts five claims of ineffective assistance of counsel.[*]

## INEFFECTIVE ASSISTANCE OF COUNSEL

Valdez-Gonzalez claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an

---

[*] This order addresses each claim. To the extent that the motion to vacate or the supplements are construed to assert another claim, the additional claim was rejected as part of the original five claims.

ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Valdez-Gonzalez must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691-92. To meet this burden, Valdez-Gonzalez must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on

investigation." 466 U.S. at 690-91. Valdez-Gonzalez cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)). *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

Ground One:

Valdez-Gonzalez alleges that his plea was involuntary because his counsel rendered ineffective assistance by not both negotiating a plea agreement and informing him about the potential length of his sentence. Valdez-Gonzalez contends that he was coerced into pleading guilty because counsel failed to adequately investigate a meritorious defense. Valdez-Gonzalez is one of ten defendants indicted for both conspiring to possess and possessing with the intent to distribute five kilograms or more of cocaine while on board the <u>Gatun</u>. Two of the defendants pleaded guilty a

few weeks before trial. The remaining eight defendants, including Valdez-Gonzalez,

pleaded guilty on the day of trial after jointly conferring amongst themselves and their

counsel. The court considered the arguments offered in support of the motion to

withdraw his plea and rejected the motion as follows (Doc. 437 at 7-11):

> I have looked with care before coming in this morning at the defendant's motion, again Document [298], which seeks both to withdraw his plea of guilty and to substitute new counsel for the federal public defender. Frankly, I think that the motion does not even state a basis for either.
>
> The basis to withdraw a plea is familiar to everyone and typically the reference is to *United States vs. Buckles*, the frequently cited Eleventh Circuit case. The factors there, I think, applied to the matters appearing in the defendant's motion result in a denial of the motion, frankly, by several comfortable orders of magnitude. This defendant received close assistance of counsel and counsel was available at all pertinent times—counsel known to me to be capable, of course.
>
> I know that these defendants in the well of this court on the Monday morning before a jury selection to begin at the conclusion of the lunch hour convened in what appeared to me to be a common convention to discuss the prospect of entering a plea of guilty rather than continuing to trial. It is difficult, frankly, to imagine that the discussion was not thorough given the presence of all the defendants and all the counsel and the ready exchange among them.
>
> Setting that aside, I know that counsel is well able to without any assistance fully apprise her client of the reasons one would or would not enter a plea of guilty.
>
> But all of that aside, even this defendant then proceeded before a magistrate judge, himself an experienced defense counsel, who in a proceeding that I have had an opportunity to review, fully apprised this defendant of the circumstances in which he entered a plea. And Magistrate Judge McCoun, it is safe to say, is careful, as he was in this instance, and always attentive to the rights of a defendant, as he was here. I'm satisfied and he was

satisfied—that is he, Magistrate Judge McCoun was satisfied— that this plea was knowing and voluntary.

I think it manifest that in this case that judicial resources would not be conserved by granting this motion and beginning anew in the case of this defendant or all of the other defendants who seem coincidentally to have suddenly had the same epiphany and realized that they were not counseled, at least as they assess it. I think it would not conserve judicial resources to begin anew.

I would add all of these defendants and their counsel knew then and know now that among the reasons the original scheduled trial was specially set was the need to bring military personnel who are not constantly within the bounds of the United States but are on duty on the high seas and elsewhere to the courtroom for testimony. That process is awkward, expensive, and slow. It certainly would not conserve judicial or other resources to permit the proceedings implicit in the granting of Document [298].

I will say that in the case of a clearly established injustice of some sort or other clear basis for withdrawing a plea that the fact of some judicial inconvenience probably ought not to be decisive, as I have commented in writing elsewhere.

It is still a consideration that's notable in the present set of circumstances. I think there is no facial – just on the face of the motion, it's insufficient to grant the relief requested and it is denied as to the motion to withdraw the plea. Actually, also with respect to the motion, I see no basis for any conflict or the like that justifies at this late date removing the public defender from this representation. While the defendant is entitled to counsel, he is not entitled, for no reason, to a succession of counsel or counsel of his choice, at least at the public's expense. He has been, so far as I can tell and I am in a good vantage, well represented and more than adequately represented. I see no conflict or the like warranting any change in those circumstances. As well, this motion to – what I will construe as a motion to substitute counsel or the like is as well withdrawn and I propose that we proceed to sentence.

Valdez-Gonzalez presented these claims earlier in his motion to withdraw his

plea and to dismiss counsel based on counsel's alleged ineffectiveness. The motion

alleged that (1) counsel had refused to pursue certain motions and defenses, ones that counsel believed were "not viable, procedurally barred, or both" and (2) counsel had misrepresented Valdez-Gonzalez's "options" and the "consequences" of his plea, "leav[ing] him with no choice" but to plead guilty (Doc. 298 at ¶10 and ¶11). The sentencing hearing started with argument on the motion to withdraw and to dismiss counsel. In summarizing the situation, defense counsel stated that Valdez-Gonzalez "basically is alleging that we did not proceed with the defenses at trial that he wished to proceed with and instead convinced him to plead guilty when in fact he did have a defense that he now wishes to proceed with at a trial." (Transcript of Sentencing Hearing at 5, Doc. 437)

Valdez-Gonzalez's guilty plea was both knowing and voluntary, and he specifically waived his right to present a defense. *See Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) ("A defendant who enters a plea of guilty waives all non-jurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained."). *See also Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("[T]he representations of the defendant . . . [at the plea proceeding] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."). Having previously considered and rejected Valdez-Gonzalez's arguments, these claims are not entitled to another review.

Ground Two:

Valdez-Gonzalez alleges that counsel rendered ineffective assistance by not asserting a jurisdictional challenge, specifically that the United States had no right to seize the Gatun. Valdez-Gonzalez is precluded from advancing this claim because when he pleaded guilty he agreed with the United States's factual allegation that the Panamanian government granted the Coast Guard permission to board and conduct an inspection of the vessel. Consent by the Panamanian government subjects the vessel to the jurisdiction of the United States. "[A] 'vessel subject to the jurisdiction of the United States' includes — (C) a vessel registered in a foreign nation where the flag nation has consented or waived objection to the enforcement of United States law by the United States . . . ." 46 U.S.C. App. § 1903(c)(1). The jurisdictional argument Valdez-Gonzalez advances was rejected in *United States v. DeVila*, 216 F.3d 1009, 1014, 1017 (11th Cir. 2000), *cert. denied*, 534 U.S. 843 (2001). The Panamanian nationals aboard the vessel were returned to Panama and the Panamanian government consented to the United States retaining custody of the Mexican nationals, including Valdez-Gonzalez.

Valdez-Gonzalez argues that counsel should have investigated whether an agreement exists between the United States and the government of Panama. No investigation was necessary. Before Valdez-Gonzalez pleaded guilty the United States certified that jurisdiction over the *Gatun* was proper and cited the agreement between the two countries. (Doc. 184) Valdez-Gonzalez argues that he never intended to

import the cocaine into the United States, an argument of no consequence because his crime of conviction contains no nexus or "intent to import" element. *See United States v. Rendon*, 354 F.3d 1320, 1324-25 (11th Cir. 2003), *cert. denied*, 541 U.S. 1035 (2004).

Ground Three:

Valdez-Gonzalez complains that counsel rendered ineffective assistance by not challenging the weight of the cocaine. To prove ineffective assistance of counsel, Strickland requires Valdez-Gonzalez to show both deficient performance and prejudice. Valdez-Gonzalez asserts that the United States failed to consistently assert the same total weight of the cocaine. At approximately nineteen tons, the largest seizure of drugs in American maritime history at that time, Valdez-Gonzalez's faced the same possible sentence even if the total weight was a ton less. Valdez-Gonzalez shows no prejudice.

Ground Four:

Valdez-Gonzalez alleges that counsel rendered ineffective assistance by not advising him that he could contact the Mexican Consular. The Vienna Convention on Consular Relations, from which Valdez-Gonzalez asserts he acquires a right, creates no individual right. "[T]he Vienna Convention itself disclaims any intent to create individual rights, stating that its purpose 'is not to benefit individuals but to ensure the efficient performance of functions by consular posts.'" *United States v. Duarte-Acero*, 296 F.3d 1277, 1280-81 (11th Cir.) (quoting the preamble to the Vienna Convention), *cert.*

*denied* 537 U.S. 1038 (2002). Nevertheless, Valdez-Gonzalez's motion to withdraw (Doc. 298 at ¶4) shows that he consulted both Mexican and Panamanian lawyers.

Ground Five:

Valdez-Gonzalez alleges that counsel rendered ineffective assistance by not arguing for a downward departure because Valdez-Gonzalez is subject to deportation upon release. Counsel's performance was not deficient because "the fact a defendant's status as an alien renders him ineligible to serve any part of his sentence in a halfway house does not justify a downward departure" and "a sentencing court may not depart downward" because the defendant is subject to deportation. *United States v. Maung*, 320 F.3d 1305, 1308, 1309 (11th Cir. 2003).

Accordingly, the motion to vacate pursuant to 28 U.S.C. § 2255 (Docs. 1, 6, and 13) is **DENIED**. The clerk shall enter a judgment against Valdez-Gonzalez and close this case.

## CERTIFICATE OF APPEALABILITY

Rule 11(a), Rules Governing Section 2255 Cases, requires a district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." As stated in *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000):

> To obtain a COA under § 2254(c), a petitioner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot [v. Estelle*, 463 U.S. 880 (1983)], includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'"

> *Barefoot*, *supra*, at 893, and n.4, 102 S. Ct. 3383 ("sum[ming] up" the "substantial showing" standard).

An applicant need not show probable success on appeal, but the issuance of a certificate of appealability entails more than "mere good faith" or only the "absence of frivolity." As stated in *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003):

> We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail. As we stated in *Slack [v. McDaniel*, 529 U.S. 473 (2000)], "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 529 U.S. at 484, 120 S. Ct. 1595.

Valdez-Gonzalez's motion to vacate was denied on the merits. Because jurists of reason would not fairly debate whether the motion states a valid claim of the denial of a constitutional right, a certificate of appealability is unwarranted.

ORDERED in Tampa, Florida, on December 15, 2011.

*Steven D. Merryday*
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE